Lewis Eugene ALLEN, Jr., Appellant,

v.

Lera TALLEY, Appellee.

No. 11–96–286–CV.

Court of Appeals of Texas,
Eastland.

July 24, 1997.

Rehearing Overruled Aug. 21, 1997.

Michael Kris King, Ewing Adams, Adams & King Law Firm, Longview, for appellant.

Loren B. Smith, Earl Roberts, Jr., Gregory Jordan Wright, Roberts, Hill, & Calk, Longview, for appellee.

Before ARNOT, C.J., and DICKENSON and WRIGHT, JJ.

## OPINION

WRIGHT, Justice.

This is a will construction case. The question presented is whether the decedent's will contains words of survivorship which preclude application of the anti-lapse statute.[1]

1. TEX. PROB. CODE ANN. § 68 (Vernon Supp. 1997) provides in relevant part:

(a) If a devisee who is a descendant of the testator or a descendant of a testator's parent is deceased at the time of the execution of the will, fails to survive the testator, or is treated as if the devisee predeceased the testator by Section 47 of this code or otherwise, the descendants of the devisee who survived the testator by 120 hours take the devised property in place of the devisee. The property shall be divided into as many shares as there are surviving descendants in the nearest degree of kinship to the devisee and deceased persons in the same degree whose descendants survived the testator. Each surviving descendant in the nearest degree receives one share, and the share of each deceased person in the same degree is divided among his descendants by representation. For purposes of this section, a person who would have been a devisee under a class gift if the person had survived the testator is treated as a devisee unless the person died before the date the will was executed.

(e) This section applies unless the testator's last will and testament provides otherwise. For example, a devise or bequest in the testator's will such as "to my surviving children" or "to such of my children as shall survive me" prevents the application of Subsection (a) of this section.

The trial court held that it did and granted summary judgment accordingly. We affirm.

The facts are not disputed. The controversy results from the will of Mary B. Boase Shoults, deceased, which provides in relevant part:

> I give, devise and bequeath unto my *living brothers and sisters:* John Allen, Claude Allen, Lewis Allen, Lera Talley, and Juanita Jordan, to share and share alike, all of the property, real, personal and mixed, of which I may die seized and possessed or be entitled to at my death. (Emphasis added)

At the time she executed her will, Mary had 3 brothers and 2 sisters who were alive. However, by the time that Mary died, all of her brothers and sisters had predeceased her except for her brother, Claude Allen, and her sister, Lera Talley. Each of the siblings who predeceased Mary left surviving children. Lewis Eugene Allen, Jr. is a surviving child of Lewis Allen, Sr.. He filed an application to probate Mary's will. He also asked for the issuance of letters of administration and opposed Lera's request that letters of administration be issued to her. The court admitted the will to probate, but the order did not appoint an administrator.

Both Lewis, Jr. and Lera filed petitions for declaratory judgment. Lera argued that Mary intended that her estate pass to her brothers and sisters who were living at the time of her death and that the phrase "I give, devise and bequeath unto my living brothers and sisters: [naming them], to share and share alike" operates as words of survivorship precluding the application of the anti-lapse statute. On the other hand, Lewis, Jr. maintained that those words are not words of survivorship, that they do not create a class gift, and that the anti-lapse statute applies. If Lera is correct, then she and her brother, Claude, Mary's only living siblings as of the date of Mary's death, will share the entire estate. If Lewis, Jr.'s position is correct, then three-fifths of the estate will be shared by the survivors of Mary's deceased siblings because of the anti-lapse statute. Under Lewis, Jr.'s theory of the case, the remaining two-fifths would be shared equally by Claude and Lera. Both Lewis, Jr. and Lera filed motions for summary judgment. The trial court agreed with the position taken by Lera and granted her motion for summary judgment. In two points of error, Lewis, Jr. argues that the trial court erred in granting Lera's motion for summary judgment and in denying his motion for summary judgment.[2]

The primary concern of the court in the construction of a will is to determine the testator's intent. *Henderson v. Parker*, 728 S.W.2d 768, 770 (Tex.1987). The intent of the testator must be ascertained by reviewing the will in its entirety. *Henderson v. Parker*, supra.

Neither party argues that the will is ambiguous, although both parties offer differing constructions of the will based on the same language. In the absence of ambiguity, we must construe the will based on the express language used. *Henderson v. Parker*, supra. We must determine what Mary meant by what she actually said, and not by what she should have said, giving the words used in the will their common and ordinary meaning absent a contrary expression in the will. *White v. Taylor*, 155 Tex. 392, 286 S.W.2d 925 (1956). If the court can give a "certain or definite legal meaning or interpretation" to the words of an instrument, the instrument is unambiguous; and the court may construe it as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983).

Lewis, Jr. argues that Mary intended for her estate to pass to her brothers and sisters who were living at the time the will was executed. He cites *Henderson v. Parker*, supra, as support for his contention. Lera distinguishes *Henderson* and, instead, relies, in part, upon *Perry v. Hinshaw*, 633 S.W.2d 503 (Tex.1982).

The questioned clauses from *Perry*, from *Henderson*, and from Mary's will are:

### Perry v. Hinshaw Will

THIRD: Upon the death of HATTIE PETERSON, I direct that the real proper-

---

2. Other children of Mary's deceased siblings filed answers in the trial court, but Lewis Eugene Allen, Jr. is the only such child who perfected an appeal to this court.

ty from which the said HATTIE PETER-SON, was receiving the rentals during her life time, be divided among the surviving sisters and brothers of myself and my beloved husband in the following manner: to my sister, MRS. HATTIE HOHHOF of Chicago, Illinois, one-half (1/2); and the remaining half to be divided equally, share and share alike, among the surviving brothers and sisters of my beloved husband, D.E. HINSHAW, the same being WILLIAM HINSHAW, FANNIE STEELE, COSA FRENSLY, LUDA JONES, and VERA PERRY, share and share alike.

### Henderson v. Parker Will

[T]hen in that event we give, devise and bequeath unto our surviving children of this marriage, all of our property and estates, of every nature and description, real, personal, and mixed, and wherever situated, in fee simple, as follows:

TO DONALD E. PARKER 28 1/3 acres on the east end of our 95 acre tract, to MARVIN N. PARKER the center 33 1/3 acre tract with all improvements; and WILLIAM ALFRED PARKER the west 33 1/3 acres. Our will is that the land be divided equally between our three sons after deducting five acres heretofore given to DONALD E. PARKER.

### Mary's Will

I give, devise and bequeath unto my living brothers and sisters: John Allen, Claude Allen, Lewis Allen, Lera Talley, and Juanita Jordan, to share and share alike, all of the property, real, personal and mixed, of which I may die seized and possessed or be entitled to at my death.

In *Henderson,* the testators executed joint and reciprocal wills containing three alternative dispositions of their estate. The first two dispositions were to operate in the event one spouse survived the other and devised the entirety of the testators' estate to the survivor. The testators were survived by two sons, Donald and Marvin. The testators' son, William, predeceased the testators. He was survived by two daughters, Aline and Betty. Aline argued that the testators in-

tended to create individual gifts to each of the three brothers and that the devise to William did not lapse but, instead, vested in his children, Aline and Betty.

The trial court granted the sisters' motion for summary judgment dividing the property to Donald and Marvin as provided under the wills, and the sisters each received an equal share of the property devised to their father, William. The court of appeals reversed the judgment of the trial court, found that the language created a class gift, and held that the two surviving brothers were entitled to the entire estate. The supreme court reversed, holding that the statement "[o]ur will is that the land be divided equally between our three sons" evidenced an intent to devise specific gifts to each son and that those gifts would inure to Aline and Betty to the extent of their deceased father's share. The court noted that the earlier survivorship provision was *merely a general statement* and that it was controlled by the subsequent, more specific provision which contained no words of survivorship. The court stated:

> Because a testator's intent is determined as of the time the will is executed, we read the phrase "surviving children of this marriage" to mean children "surviving" at the time the will was executed. *Winkler v. Pitre,* 410 S.W.2d 677, 679 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.). The absence of survivorship language in the subsequent, more specific provision supports such a construction.

In *Perry,* all of D.E. Hinshaw's siblings had predeceased him except for Vera Perry. The supreme court held that Vera was entitled to one-half of the estate as the only surviving sibling:

> Lydia Hinshaw's will contains words of survivorship. Clearly, Vera Perry, as sole survivor of the brothers and sisters of D.E. Hinshaw, is entitled to an undivided½ interest in the rental property. The fact Lydia Hinshaw [the testatrix] named her husband's brothers and sisters and also referred to them in terms of a class creates no ambiguity which would force this Court to resort to rules of construction. Any ambiguity is avoided by the clause:

"share and share alike, among the surviving brothers and sisters."

*Perry v. Hinshaw,* supra at 505.

 Here, Mary's will contained one general provision devising her entire estate to her "living brothers and sisters." There were no other specific provisions. Logically, Mary would not have devised any property owned at her death to any brothers or sisters who were deceased at the time the will was executed. Moreover, when the phrase "living brothers and sisters" is construed in light of the entire sentence, it is clear that Mary intended that it was her brothers and sisters who were living at the time of her death who were to participate in the ownership of her estate. Otherwise, the phrase "share and share alike," followed by no specific provisions to the contrary, would add nothing to the meaning of the will. We construe "living brothers and sisters," as used in the entire context of Mary's will, to be words of survivorship. Therefore, neither those who did not survive Mary nor their heirs are entitled to take under Mary's will. As Mary's only surviving siblings, Lera Talley and Claude Allen are entitled to share equally in the entire estate. Appellant's points of error are overruled.

The judgment of the trial court is affirmed.