**Opinion filed May 12, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00189-CV
_____

## PAUL LEIGHTON PRATHER AND MARCUS ALBERT PRATHER, Appellants

## V.

## CALLON PETROLEUM OPERATING COMPANY, INC.; ALLDALE MINERALS II, LP; CASE ENERGY PARTNERS, LLC; AND MONTAIGNE MINERALS, LLC, Appellees

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 53738**

### O P I N I O N

In this will construction appeal, we must determine the meaning of the phrase "survivor(s) thereof." The controversy that is central to our determination originates from an ownership dispute regarding certain mineral interests and associated royalty interests located in Howard County. The testatrix, Olga Stamps, had two daughters, June McCasland and Margaret Ogden. Appellants, Paul Leighton Prather and

Marcus Albert Prather, are June's children and claim ownership to the disputed interests through her. Appellee Callon Petroleum Operating Company, Inc. is the current operator of certain oil and gas leases that include the disputed interests. Appellees AllDale Minerals II, LP; Case Energy Partners, LLC; and Montaigne Minerals, LLC (the royalty companies) claim superior title to the disputed interests based on assignments they received from Margaret's successors.

Appellants sued Callon for breach of contract after Callon suspended royalty payments purportedly due Appellants because of this title dispute. The royalty companies intervened in the suit and asserted that they held superior title to the disputed interests. Appellants and the royalty companies later filed competing motions for summary judgment. After a hearing, the trial court granted summary judgment in favor of the royalty companies. On appeal, Appellants contend that the trial court's interpretation of Olga's will and its grant of summary judgment was erroneous. We affirm.

## I. *Factual Background*

Olga Stamps executed her will in 1995 and named Margaret and June as her sole beneficiaries. In Section II of her will, Olga devised all of her property, including the disputed mineral and royalty interests, to Margaret and June as follows:

> I GIVE, DEVISE and BEQUEATH unto my children, JUNE LAVELLE MCCASLAND and MARGARET A. OGDEN, to share and share alike, all of the property which I may own at the time of my death, real, personal and mixed, tangible and intangible, of whatsoever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this will, including all lapsed legacies and devises or other gifts made by this will which fail for any reason (but excluding any property over which I may have any power of appointment), in fee simple. *In the event that one of the beneficiaries in this paragraph is not living at the time of my death, then his or her share shall go to the survivor(s) thereof.*

2

(Emphasis added). In her will's residuary clause, Olga also devised the residual of her estate to Margaret and June, to share and share alike, including any lapsed legacies or devises made by the will. Unlike Section II of Olga's will, the residuary clause does not contain any similar survivorship terms.

June predeceased Olga. When Olga passed, her will was admitted to probate as a muniment of title. Later, believing they had inherited June's share of the disputed mineral interests, Appellants executed a series of mineral leases to a third party. These leases were eventually assigned to Callon, which currently operates the leases. When Margaret (who survived Olga) passed, her children inherited her share of the disputed mineral interests. Margaret's children eventually sold their inherited interests to the royalty companies.

After Callon became aware of the competing claims to the disputed mineral interests, it determined that the royalty payments should be suspended pending the resolution of this title dispute. Appellants thereafter sued Callon for breach of contract and sought attorney's fees based on the suspension of the royalty payments allegedly due them. The royalty companies intervened in the suit and claimed superior title to the disputed interests. As the surviving children of June, Appellants alleged in the trial court, and they argue on appeal, that the phrase "survivor(s) thereof" in Section II of Olga's will refers to them; therefore, June's share of Olga's estate passed to them upon Olga's death. The royalty companies contended in the trial court that the phrase "survivor(s) thereof" refers only to Olga's two children, Margaret and June; therefore, because June did not survive Olga, and Margaret did, upon Olga's death, Margaret took Olga's entire estate under Section II of the will. As such, the royalty companies argue on appeal that, as successors to Margaret's interests by virtue of the assignments from Margaret's children, they hold superior title to the disputed interests.

3

In their motion for summary judgment, Appellants sought a construction of Olga's will. Specifically, Appellants requested that the trial court (1) interpret Olga's will in their favor, (2) order Callon to pay the suspended royalties to them, and (3) grant them "such other and further relief" to which they were entitled. Notably, Appellants' motion did not address or present any evidence on the breach-of-contract claim and request for attorney's fees they had asserted against Callon. In their cross-motion for summary judgment, the royalty companies sought a judgment to quiet title on the disputed mineral interests. Callon filed a response to these motions in which it took no position on the merits of the dispute, except to assert that the trial court should not interpret Appellants' broad prayer for relief to entitle them to judgment on the claims they had asserted against Callon because Appellants had neither moved for any relief nor adduced any evidence in their motion that was pertinent to those claims; therefore, Appellants had not met their summary judgment burden.

The trial court signed a final judgment in which it granted the royalty companies' motion for summary judgment, denied Appellants' motion, and ordered that, as a result of its rulings, Appellants took nothing on all claims they had asserted against Callon and the royalty companies in the underlying suit. This appeal followed.

## II. *Standard of Review – Summary Judgment*

We review summary judgments de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). If a traditional summary judgment motion is filed, the movant has the burden to show that no genuine issue of material fact exists and that the trial court should grant judgment in the movant's favor as a matter of law. TEX. R. CIV. P. 166a(a), (c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003). If the movant meets its summary judgment burden, the burden shifts to the nonmovant, who must raise a genuine issue of material fact that would

preclude the grant of summary judgment. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 510–11 (Tex. 2014).

To determine if a genuine issue of material fact exists, we review the evidence in the light most favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019); *Knott*, 128 S.W.3d at 215. We credit evidence favorable to the nonmovant if reasonable jurors could do so, and we disregard contrary evidence unless reasonable jurors could not. *Samson Expl., LLC v. T.S. Reed Props., Inc.*, 521 S.W.3d 766, 774 (Tex. 2017); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). The evidence raises a genuine issue of material fact if reasonable and fair-minded jurors could differ in their conclusions in light of all the summary judgment evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

When the parties file competing summary judgment motions and the trial court grants one motion and denies the other, as in this case, we review all of the summary judgment evidence, determine the issues presented, and render the judgment that the trial court should have rendered. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (citing *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)).

### III. *Governing Law*

We construe whether a will is unambiguous as a matter of law. *Knopf v. Gray*, 545 S.W.3d 542, 545 (Tex. 2018) (citing *El Paso Nat'l Bank v. Shriner's Hosp. for Crippled Children*, 615 S.W.2d 184, 185 (Tex. 1981)). Here, the parties to this appeal each assert that Olga's will is unambiguous—though they advance differing interpretations as to its meaning—and we agree. *See In re Estate of Slaughter*, 305 S.W.3d 804, 809 (Tex. App.—Texarkana 2010, no pet.) ("[A]mbiguity [in a will]

does not arise merely because the parties disagree on the will's interpretation or because of a simple lack of clarity." (citing *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999))); *Steger v. Muenster Drilling Co.*, 134 S.W.3d 359, 372–73 (Tex. App.—Fort Worth 2003, pet. denied).

The "cardinal rule" of will construction is to ascertain the testatrix's intent and to enforce that intent to the extent the law permits. *Knopf*, 545 S.W.3d at 545 (citing *Sellers v. Powers*, 426 S.W.2d 533, 536 (Tex. 1968)); *Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016). We look to the instrument's language, consider its provisions as a whole, and attempt to harmonize them so as to give effect to the will's overall intent. *Knopf*, 545 S.W.3d at 545 (citing *Stephens v. Beard*, 485 S.W.3d 914, 916 (Tex. 2016)). We focus not on what the testatrix intended to recite, but on the meaning of the words she actually used. *Stephens*, 485 S.W.3d at 916; *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980). Such words, "whether technical or popular," are construed "in their plain and usual sense, unless a clear intention to use them in another sense" is present in the instrument. *Stephens*, 485 S.W.3d at 916 (quoting *White v. Taylor*, 286 S.W.2d 925, 926 (Tex. 1956)); *see Knopf*, 545 S.W.3d at 545 (citing *Bergin v. Bergin*, 315 S.W.2d 943, 946 (Tex. 1958)). Where a testatrix's intent is clear, we need not resort to artificial rules of construction. *Perry v. Hinshaw*, 633 S.W.2d 503, 505 (Tex. 1982).

IV. *Analysis*

A. *Construction of Olga's Will*

We first address the sole issue raised by Appellants and the primary focus of this appeal—the construction of Olga's will. Appellants assert that, to harmonize all sections of Olga's will and faithfully adhere to her intent, we must construe the phrase "survivor(s) thereof" in Section II of the will to mean "heirs." In other words, Appellants posit that the phrase "survivors thereof" in Section II means the respective heirs of Margaret and June should either of them predecease Olga. We

6

disagree. Here, the terminology used by Olga in Section II, when read in context with the remainder of that paragraph and as found within the entire instrument (the will), dictates a result that is clearly contrary to the argument Appellants have urged on appeal—the determinations made by the trial court on the issues now before us.

In the single paragraph that promulgates Section II of her will, Olga devised all of her property "to my children, [named], to share and share alike." In the following sentence, she stated: "In the event that one of the beneficiaries in this paragraph is not living at the time of my death, then his or her share shall go to the survivor(s) thereof." We hold that this provision, in this context, constitutes words of survivorship.

To be sure, the mere presence of words such as "survivor(s) thereof" does not conclusively establish that Olga intended to require that survivorship be a condition of taking under Section II of her will. There are no magic words which, in isolation from the rest of the will, can establish a meaning that is contrary to the testatrix's basic intention as indicated by the entire instrument. *Hysaw*, 483 S.W.3d at 8. Rather, "[a]scertaining intent from the four corners of a will requires careful examination of the words the testatrix chose," and "'[t]he sense in which the words were used by the testat[rix] is the ultimate criterion.'" *Id.* at 7 (second alteration in original) (quoting *Stewart v. Selder*, 473 S.W.2d 3, 7 (Tex. 1971)).

Appellants' reply brief succinctly captures the crux of their argument: in their view, there is no reasonable construction in which "a reasonable [testatrix] might identify her adult grandson as a potential executor, trustee, and beneficiary in other circumstances but yet wall him off from all estate benefits in the happenstance that his mom was to predecease his grandmother." On these facts, we cannot agree.

In their briefing, Appellants rely heavily on the Texas Supreme Court's decision in *Hysaw v. Dawkins*, both for the general interpretive principles reiterated and emphasized in that case and for the result that the application of those principles

to the facts of that case demanded. 483 S.W.3d 1. The key principle reiterated in *Hysaw* is that a will should be interpreted in its entirety, not piecemeal or in isolation. *Id.* at 13. Although we agree with this principle, Appellants' reliance on *Hysaw* in this instance is misplaced.

*Hysaw* involved a will which contained a "double fraction" royalty interest predicament. *Id.* at 4–13. This situation commonly arises in older oil and gas deeds due to "the legacy of the 1/8th royalty" and a theory known as "estate misconception." *Id.* at 10. The will contained seemingly inconsistent provisions, and the court holistically harmonized those provisions in an effort to determine the testatrix's intent. *Id.* at 14. The dispositive point was that although two of the three provisions accorded "fixed" royalty interests in accordance with the historical standard use of the "1/8 royalty" terminology, the third royalty provision indicated that the testatrix intended for all royalty devises to be "floating" interests because it required a re-equalization of the shares to each child in the event of an *inter vivos* scenario that diminished the overall available royalty. *Id.* at 15. An interpretation of the other two provisions in accordance with the historical meaning of the "1/8 royalty" terminology would "produce a paradoxical result," because it would counteract the clear meaning of the third royalty provision. *Id.* at 15–16. Thus, the court determined that the only plausible construction supported by a holistic reading of the will was that the testatrix used the phrase "one-eighth royalty" as a shorthand phrase for the entire royalty interest that a lessor could retain under a mineral lease. *Id.*

The context of the will before us is much more straightforward. Although the holding in *Hysaw* does not dictate the result of this appeal, we nonetheless apply the same principles of holistic will construction. We recognize that circumstances exist in which the courts are tasked with deciding whether certain words in a will constitute a condition of survivorship. Indeed, the result of each scenario depends

on the specific words and context of the will that is construed. *See, e.g.*, *White v. Moore*, 760 S.W.2d 242 (Tex. 1988) (holding that a provision that left property "to my six children, [naming each] and to the survivor or survivors of them at the time of my death" was ambiguous as to whether the will expressed an intent to disinherit descendants of the children); *Perry v. Hinshaw*, 633 S.W.2d 503 (Tex. 1982) (holding a provision that devised 1/2 of the subject real property to be divided "share and share alike, among the surviving brothers and sisters" contained words of survivorship); *Allen v. Talley*, 949 S.W.2d 59 (Tex. App.—Eastland 1997, pet. denied) (holding that the phrase "to my living brothers and sisters" constituted words of survivorship because the testatrix used the word "living" for a purpose); *Gregg v. Jones*, 699 S.W.2d 378 (Tex. App.—San Antonio 1985, writ ref'd n.r.e.) (holding the residuary provision that left property to the testatrix's husband and "any children that might survive me, or the survivors or survivor of them" was a clear reference to a class gift and excluded the surviving heirs of the husband).

Appellants argue that the conditional plural form of the noun "survivor(s)" in Section II of Olga's will indicates that she intended for the term to mean "heirs" because if either Margaret or June predeceased Olga, there would have been only a singular possible survivor, thus rendering the inclusion of the plural form meaningless. At least one of our sister courts of appeals has declined a similar invitation to interpret the terms "survivors" and "heirs" synonymously. *Gregg*, 699 S.W.2d at 379; *see also White*, 760 S.W.2d at 243 (acknowledging *Gregg* but remanding on different grounds). We agree with the court's reasoning in *Gregg* and reject Appellants' argument that the terms "survivors" and "heirs" are one in the same. In fact, these terms differ and are not interchangeable.

Moreover, we conclude that the inclusion of the conditional plural form of "survivor(s)" as stated in Section II of Olga's will, could allow for a pretermitted child. *See* TEX. EST. CODE ANN. §§ 255.051, .053(b) (West 2020). In Section II of

her will, the last sentence refers to "the beneficiaries *in this paragraph*," which are previously identified as Olga's children, Margaret and June. (emphasis added). However, this sentence also states that, if a beneficiary is not alive at the time of Olga's death, "then *his or her* share shall go to the survivor(s) thereof." (emphasis added). This reference above to a possible male beneficiary indicates the accommodation for a pretermitted child because the only children of Olga who are identified in her will are female. While Olga's will is not, perhaps, a model of artful drafting, we must endeavor to interpret each provision in a meaningful way. *See Estate of Etheridge*, 594 S.W.3d 611, 615 (Tex. App.—Eastland 2019, no pet.).

Appellants attempt to rely on *White* and to distinguish *Gregg* to demonstrate that the language in Olga's will cannot support the grant of summary judgment in favor of the royalty companies. According to Appellants, the Texas Supreme Court in *White* rejected the court's analysis in *Gregg* that the term "survivors" does not mean "heirs," and therefore we should similarly reject *Gregg*'s analysis and hold that it cannot support the grant of summary judgment. *See White*, 760 S.W.32d at 243–44 (citing *Gregg*, 699 S.W.2d at 379). Appellants' argument is flawed and unpersuasive. The will language in *White* bequeathed to the testatrix's "six children [naming them] and to the survivor or survivors of them at the time of my death." *Id.* at 243. This phrase was held to be ambiguous because the designated beneficiaries could be construed to encompass not only the six expressly named children but also an additional group of recipients. Therefore, although acknowledging the holding in *Gregg*, the court in *White*, based on the facts before it, concluded that a remand was necessary because the specific will language at issue was ambiguous. *Id.* at 243–44. That element of ambiguity is not present here because Olga's designation of beneficiaries was clear, specific, and made no reference to any possible descendants or heirs of the specific beneficiaries (Margaret and June) that she identified in Section II of her will. *See Hedgecoke v. Amarillo Nat'l Bank*, No. 07-

10

03-0376-CV, 2004 WL 1150961, at *3 (Tex. App.—Amarillo May 24, 2004, no pet.) (mem. op.) (explaining and distinguishing the ambiguity in *White*).

To ascertain Olga's testamentary intent, we must adhere to the words she used, as contained within the context of her will as a whole. *See Hysaw*, 483 S.W.3d at 15; *Welch v. Straach*, 531 S.W.2d 319, 322 (Tex. 1975). In Section II of her will, the "survivor(s) thereof" phrase that Olga included attached to the property that she devised to Margaret and June. In Section III, Olga also devised her residuary estate, including any lapsed gifts made by the will, to Margaret and June. Despite the designation of identical beneficiaries in each section of her will, Olga did not include any survivorship language in Section III, though it is reasonable to conclude that she was aware of this contingency and chose not to do so. Because Appellants would inherit as June's heirs under the residuary clause of Section III or because other sections of the will designate Paul Prather as a potential substitute or successor trustee and executor is of no consequence. In this instance, neither scenario changes or precludes the meaning or intent of the last sentence of Section II.[1]

Appellants further contend that Olga disfavored lapses in her will, as shown by her specific inclusion of any lapsed gifts or legacies under the will in Sections II and III. This argument is not persuasive and merely repeats the same contention that pervades all of Appellants' arguments—that because they stand to benefit under other sections of the will, we should not construe the plain language of Section II to mean what it otherwise clearly does. Here, such a conclusion would be inconsistent with the purpose of a holistic construction.

---

[1]Section IV of Olga's will, which creates a trust for June's share with Margaret as trustee, names Paul as substitute or successor trustee and provides that both Appellants will receive equal shares of the assets from June's trust (apart from one specific property) upon June's death. Likewise, Section V names Paul as a potential substitute or successor executor, although a different person is the first named substitute or successor executor.

Undoubtedly, Olga required survivorship as a condition of either Margaret, June, or both of them taking under Section II of the will. *See White*, 760 S.W.2d at 244; *see also Allen*, 949 S.W.2d at 62. As we have said, the meaning of survivorship is central to the disposition of this appeal. Common sense dictates that a "survivor" is one who remains alive or survives an event; we cannot conceive of a contrary interpretation. Therefore, because only Margaret was surviving at the time of Olga's death, she alone took Olga's estate under Section II. Accordingly, we overrule Appellants' sole issue.

B. *Waiver of Appellate Issues Against Callon*

The trial court, as shown by its final judgment, disposed of *all* claims asserted by Appellants in the underlying suit, including the breach-of-contract claim and request for attorney's fees they alleged against Callon. Because Appellants have neither assigned a point of error to the trial court's final disposition of their claims against Callon nor otherwise raised this issue on appeal, any error they could have advanced concerning the trial court's actions in this regard is waived.

"A trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable." *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020). If the trial court's intent to finally dispose of the case is clear from its judgment, the judgment is final and its finality is not disturbed even if the record does not afford a legal basis for the trial court to adjudicate a claim. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 206 (Tex. 2001); *see also Bella Palma*, 601 S.W.3d at 801. "A statement like, 'This judgment finally disposes of all parties and all claims and is appealable', would leave no doubt about the court's intention." *Lehmann*, 39 S.W.3d at 206.

It is improper if a trial court disposes of a party's claim by summary judgment when the claim was not raised or addressed in a summary judgment motion. TEX. R. CIV. P. 166a; *see Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex. 1990)

12

("A summary judgment movant may not be granted judgment as a matter of law on a cause of action not addressed in a summary judgment proceeding."). Nevertheless, "if a defendant moves for summary judgment on only one of [multiple] claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims [the plaintiff has] asserted, the judgment is final—erroneous, but final."[2] *Lehmann*, 39 S.W.3d at 206.

In its final judgment, the trial court expressed its intent to finally dispose of all claims that the parties had raised in the underlying suit when it recited that (1) based on its rulings on the cross-motions for summary judgment, Appellants would "take nothing on *all* of their claims" (emphasis added), (2) any relief not granted was denied, and (3) its judgment was final and appealable. Further, Callon's response to the cross-motions for summary judgment clearly addressed the dilemma that, as to the claims Appellants had asserted against Callon, Appellants had neither moved for any relief in their motion nor adduced relevant evidence to meet their summary judgment burden on either claim.

Although the primary focus of Appellants' motion for summary judgment was the trial court's construction of Olga's will, their motion includes only a global and conclusory prayer that the trial court should order "Callon Petroleum to pay all past and future sums" from the disputed interests to Appellants. Appellants have followed the same path in this appeal. Just as in the trial court below, Appellants' briefing focuses entirely on the trial court's will construction determination and includes only an isolated, global request, without supporting argument, that we should remand their claims against Callon for breach of contract and attorney's fees to the trial court for further consideration. Such an inadequacy presents nothing for our review.

---

[2]This analysis also applies to scenarios involving multiple parties, as in the situation here. *Lehmann*, 39 S.W.3d at 205–06.

It is clear that the trial court intended for its order to constitute a final judgment as to *all* claims that Appellants had asserted against *all* parties to the underlying suit, and it is equally clear that all parties to the suit, including Appellants, understood and regarded it as such. *See Lehmann*, 39 S.W.3d at 205–06. In this case, the trial court should not have summarily disposed of the claims that Appellants asserted against Callon because Appellants neither sought nor moved for any such relief against Callon in their motion. However, it is indisputable that the trial court's judgment finally disposed of *all* claims and issues that were asserted by and between all parties to the underlying suit. *Id.* As such, to challenge the trial court's final judgment as it pertains to the claims that they asserted against Callon, Appellants were required to raise and address on appeal the error they claim exists. *Bella Palma*, 601 S.W.3d at 802. Waiver occurs if the error is not presented by proper assignment to the appellate court. *See Jacobs v. Satterwhite*, 65 S.W.3d 653, 655–56 (Tex. 2001). Here, Appellants failed to raise and assign any point of error on this matter. Therefore, Appellants have waived any complaint they may have concerning the trial court's disposition of the claims they asserted against Callon.

V. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER

JUSTICE

May 12, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.